(13 App. Div. 258.)

ANDERSON v. BOYER et al.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

1. MASTER AND SERVANT—FELLOW SERVANT—LIABILITY OF MASTER FOR NEGLIGENCE.
　　The captain of a lighter is not the fellow servant of a truckman in the employ of one who hires the lighter to transport goods, and therefore the owners of the lighter are liable for injuries to the truckman, caused by the captain's negligence in furnishing a rope of insufficient strength to hold a tank which was being unloaded from the lighter, for the truckman to receive and haul. Ingraham, J., dissenting.

2. EVIDENCE—BURDEN OF PROOF—NEGLIGENCE.
　　The burden of proof is on the owners of a lighter to show that their authority over it, and liability for the acts of the crew, have been superseded by means of a contract which they allege relieved them therefrom.

3. CONTRACTS—CHARTER PARTIES—NEGLIGENCE OF BOAT CAPTAIN.
　　An agreement for the use of a lighter for hauling goods does not change the control of the lighter, or exonerate the owners from responsibility for the negligence of the captain, where the owners manned it, paid the crew, furnished the supplies, and retained control of the lighter and crew. Ingraham, J., dissenting, on the ground that the jury were not warranted in finding such facts from the evidence.

Appeal from trial term, New York county.

Action by Christian Anderson against Frank W. Boyer and others for personal injuries. From a judgment in favor of plaintiff, entered on a verdict, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

J. Hampden Dougherty, for appellants.

J. Edward Swanstrom, for respondent.

RUMSEY, J.    The plaintiff was injured by the falling upon him of a heavy tank which was being unloaded from a lighter upon a dock at Newark, N. J.    The defendants were the owners of the lighter.    They had undertaken, upon a contract, the terms of which will be examined later, either to charter the lighter to one Schaenawelf, to transport certain goods from New York to Newark for him, or to carry the goods for him upon some other contract.    Among the articles to be carried was a heavy iron tank.    For the purpose of unloading this tank, it had been swung ·by ropes from the boom of the lighter; and, while it was thus swinging, the rope broke, and it fell upon the pier.    The story of the plaintiff was that he was in the employ of Schaenawelf as a truckman, and was present upon the dock, waiting to transport the goods to their place of final destination.    He says that, as he stood there upon the dock, the captain of the lighter called upon him to lend a hand to the handling of the tank, and just as he stepped forward, and put his hand upon it for that purpose, the rope broke, and it fell upon him, and caused his injuries.    The evidence was such as to warrant the jury in finding that the plaintiff's story of the circumstances under which he was injured was substantially the correct one, although many of the facts stated by the plaintiff were denied by the defendants' witnesses.

The claim of the plaintiff is that the captain of the lighter was negligent, either in selecting a rope which was obviously unfit to sustain the great weight of the tank, or in so attaching it to the tank that it was almost certain to be cut through by the weight, and that the falling of it was caused by negligence in one or the other of these respects.    The defendants, however, claim that, conceding the case to be as claimed by the plaintiff, he was a fellow servant of the captain, and, therefore, that the defendants were not liable for the captain's negligence, it appearing that they did furnish rope of sufficient strength to carry the weight of the tank.    It is undisputed that the plaintiff was in the employ of Schaenawelf, and that he had not been hired by the defendants, and had no relations with them.    That being so, he was not strictly a servant of the defendants, in any sense.    The duty of the captain and those men who were at work upon the lighter was to navigate it, and control the unloading of it.    The plaintiff was there to help take charge of the goods after they had been unloaded, and transport them to their final destination.    The duty of the captain was confined to the lighter, and the duty of the plaintiff was confined to the transportation of the goods after they had been unloaded.    They were not hired by the same person, unless the captain was a servant of Schaenawelf, which will be considered later, and they were not engaged in the same employment.    Therefore the defendants were not relieved from responsibility to the plaintiff for the negligence of the captain because the two were co-servants.    Svenson v. Steamship Co., 57 N. Y. 108; Sanford v. Oil Co., 118 N. Y. 571, 24 N. E. 313; Kilroy v. Canal Co., 121 N. Y. 22, 24 N. E. 192.

The claim that the plaintiff was guilty of contributory negligence

cannot be sustained. That question was properly submitted to the jury, and, upon the facts, their finding is conclusive, as there was plenty of evidence to sustain it.

The most serious question, however, arises upon the claim made by the defendants that they were not responsible for the negligence of the captain, if he was negligent, because they had chartered the vessel to Schaenawelf, and had no longer any control over it, and that he was in sole control, not only of the vessel, but of the persons who were employed upon it, at the time the accident occurred; so that those persons were his servants, and not the defendants'. The court submitted to the jury, in a full and complete charge, as requested by the defendants, the question as to what was the contract between Schaenawelf and the defendants for the transportation of these goods. They were instructed that "if the lighter was, at the time of the accident, hired by Schaenawelf, and that he was in control of the lighter and the captain and the men, they must find for the defendants." They were further instructed that "if the defendants had leased the lighter to Schaenawelf, together with the full use of the same, and the control of the captain and men, that Schaenawelf assumed control of the boat and the employment of the men, and had the right to control the boat and men as he pleased, and to give orders to the captain and men, and that, if this state of affairs existed at the time of the accident, they must find for the defendants." The court further charged, upon that subject, every request which was made by the defendants. The jury, nevertheless, found for the plaintiff, and therefore the liability of the defendants is established, unless it can be said that the finding was against the weight of evidence, or that, upon the undisputed facts, the boat had been leased to Schaenawelf, so that he had absolute control of the captain and the men upon it.

The evidence as to the precise terms of the contract was given by Mr. Boyer (one of the defendants) himself. He testified substantially that Schaenawelf applied to him to transport some goods from somewhere up the East river to Newark; that he was unable to obtain from Schaenawelf such information as would enable him to give the price for transportation. He then said:

"I proposed to him that I would charter him a boat by the day, furnished with two men, and he paying all the expenses of taking charge of the boat. He wanted to know what that would cost, and I told him about $15 per day. He wanted to know what the towing would be, and I told him I could not tell that, to find that out for himself, or I told him what we charged, and he agreed to it. He said he agreed to it, and then he told me that he would send the men to where this freight was coming from, to take charge of the lighter, and also to take charge of her when the stuff that she had on board was delivered. I asked him, but he could not exactly tell me, what the class of goods were. He said they were brewers' goods, and some heavy weight. I asked him what was the heaviest piece, and he said about three tons, and I asked him to describe it to me, and he did, and he said two vats,—iron vats or tanks. My proposition, which he agreed to, was to furnish him the boat and two men, at $15 per day, and he was to do his own towing. He was to do all the work necessary to carry his goods outside of my furnishing the boat,—charter the boat from me. There was a third man, I understand, aboard the boat. I did not pay that man in any way, to my knowledge. The boat which I selected for this service was the James F. Her captain is

Captain Haferstock. The mate is alongside of him. These men have been in our employment for a number of years."

Mr. Lange, the superintendent of the defendants, was present at the time of this conversation, but he gives no evidence as to nature of the contract, except that he heard Mr. Boyer make the proposition to Schaenawelf to take the boat and the two men by the day, and that Schaenawelf accepted it.

That is all the direct evidence as to the nature of the contract. It appears, however, that the boat was let to Schaenawelf to carry these particular goods from somewhere on the East river to Newark, and for no other purpose. There was produced by the plaintiff the bill which had been rendered by the defendants to Schaenawelf for the use of the boat, but that bill is of no importance, that we can discover, in the case. It does not aid in any way to explain the precise contract which was made between the parties.

In the first place, in regard to this contract, it may be said that the sole evidence from which the jury could have found precisely what it was, was that given by Boyer himself, who was one of the defendants. The defendants being the owners of the boat, their authority and liability as owners would be presumed to continue until they had proved the existence of some contract which relieved them from that liability. Hagar v. Clark, 78 N. Y. 45. The burden, therefore, was upon them to show that they had made with Schaenawelf such a contract as made the captain of the boat substantially his servant, and imposed upon him the liability for the negligence of the captain, and relieved them from it. As the evidence of that contract was given entirely by the defendant, who was an interested party, the weight to be given to that evidence was, within well-settled rules, a question for the jury; and it would have been error for the court to refuse to submit it to them. As to the terms of the contract, the defendant's testimony is not aided by that of Lange, because the testimony of Lange is consistent with a continued liability of the owner for the conduct of the men on board the boat. For this reason, without going further, we might conclude that the case was properly submitted to the jury upon this point.

But, waiving that, it still was a question for the jury, even though Boyer had been a disinterested witness. The question to be decided was, as stated by the court to the jury, whether the defendants had divested themselves of the control of the boat and the men, so that Schaenawelf had the right to employ the boat and men as he pleased, and to give orders to the captain and the men, and the defendants had no further control over them. The rule laid down by the court was the correct rule of law. The liability of the owner of a ship for the negligence of those employed upon it ceases, not necessarily where there is a charter of a vessel, but only where there has been such a demise of the vessel as to take from the owner all possession, authority, and control. He must so transfer the possession and control of the vessel as to surrender it all to the charterer, and to leave himself no right to interfere, before he is

relieved from liability. Hagar v. Clark, 78 N. Y. 45; Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796. Even giving to the testimony of Boyer the broadest interpretation claimed for it by the defendants, it was still a question of fact whether he had actually surrendered all control over the boat, and the men on board of it, to Schaenawelf. That question was to be decided, not only by the terms of the contract, which were somewhat ambiguous upon that point, but by the subsequent conduct of the parties while the contract was in process of execution. The evidence upon that point shows that the Boyers did exercise some control over the captain while he was carrying these goods. The charter, if it may be called one, was not unlimited. It was to carry special goods from one particular place to another, and it appears that, while the captain was engaged in that duty, Boyer and his superintendent sought him out, gave instructions to him, gave him directions what to do, and how to deal with Schaenawelf, and exercised the right to control his movements so far as to direct what he should do at certain times and under certain circumstances. Considering that evidence with the evidence of Boyer as to the contract, the jury were at liberty to find that the Boyers had not divested themselves of all control over the captain and the boat, but still exercised some supervision over it; and, that being so, the jury might have found that the captain was still their servant, and that they were responsible for his negligence. The finding upon that subject, therefore, was warranted by the evidence; and it was not error for the court to refuse to instruct the jury, as a matter of law, that there was no liability on the part of the defendants.

We have examined the different exceptions taken by the defendants to the refusal to charge the 9th, 11th, 12th, 13th, and 19th requests, and we find no error in them.

Upon the whole case, we are of opinion that it was properly submitted to the jury, and that the judgment should be affirmed.

VAN BRUNT, P. J., and BARRETT and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). I am unable to concur with the court that this judgment should be affirmed. At the end of the plaintiff's case, the defendants moved to dismiss the complaint, on the ground that no evidence had been adduced to show that the defendants were in control of the lighter or of the men on board of her; that this boat was leased to or hired by Mr. Schaenawelf, who had charge of the towing of her, and had entire control over her. This motion was denied, and the defendants excepted. After all the testimony was in, this motion was renewed, and again denied, to which the defendants excepted. I think this denial was error, and that the complaint should have been dismissed for the grounds stated. The evidence was entirely undisputed that the defendants, owning this lighter, and employing the men in charge of her by the month, were applied to, to transport certain articles from Newark to New York, and refused to do that work, but offered

to charter the boat to the person wishing such transportation, at $15 per day, which was to include the services of the two men on board of the boat. That was agreed to, and the boat was placed at the disposal of the charterer. From that time on, the charterer directed the movements of the boat. He directed what goods should be placed on board of her. He directed how they should be loaded and unloaded, and had entire charge and control both of the boat and the men upon her. The instances narrated in the testimony in which the defendants seem to have paid some attention to the existence of this boat, during the period for which she was chartered, do not furnish the slightest evidence of any control over the boat by the defendants. At one time the defendants' superintendent went to the dock where the boat was to load, to ascertain if she was safely there, and if everything was right with her. There certainly was no attempt to control the use of the boat or the action of the captain at this time. It seems that the boat was laid up for a month or more, in consequence of the ice, and that one of the defendants went to Newark, to see what had become of her; and, as a very large bill had accrued in consequence of the delay, he told the captain to collect the bill, and not to allow the goods to be removed until it was paid. Whether or not the captain had the power, under the agreement with the charterer, to withhold the goods on the boat until the amount was paid, would be a serious question, not necessary to discuss. But certainly there was here no interference with the management of the boat by the charterer, or with the method which he chose to adopt by which it was to be loaded or unloaded. The work that this captain was doing at the time of the accident, the negligent performance of which, it is claimed, caused the injury, was not work connected at all with the navigation of the boat, or with its preservation or protection, and was not work in which these defendants had the slightest interest. It might well be that this captain owed a duty to the defendants to navigate the boat properly, and to protect it during the period covered by the charter, and that, for neglect in the performance of that duty, the defendants would be liable. When we come, however, to the duty of putting aboard or taking off articles transported by the boat during the period for which she was chartered to another, it seems to me that the defendants had nothing to do with it. They were under no duty to load this boat, or to unload her. They assumed no responsibility to the plaintiff, or to any one else, for the safe and proper loading or unloading of the boat. That they refused to do when they refused to undertake the transportation of the articles in question. When the boat arrived at the dock where she was to be loaded, could the charterer have placed these articles upon the dock, and insisted that these defendants should load them upon the lighter, under the contract between them? Clearly not. And so, when the boat arrived at her destination, could the charterer have insisted that it was the duty of the defendants, at their own cost and expense, to unload the boat, and place the goods upon the dock? Clearly, this was not a part of the

defendants' contract by which they chartered the boat to the charterer at a certain price per day.   When, therefore, the captain of the boat, at the request, either express or implied, of the charterer, assisted his men in unloading the boat, they were not employed in doing any work which the defendants were bound or had assumed to do, but were acting for the charterer (it is not important to determine whether as volunteers or in his regular employ), payment for this being included in the amount paid for the charter of the boat.

The testimony of one of the defendants as to the contract between himself and the charterer was not disputed by any one, but was corroborated by the bill produced, which was paid by the charterer, and by the evidence of defendants' foreman, who was present and heard the conversation.   That such testimony, thus corroborated, absolutely uncontradicted, and where no claim is made on behalf of the plaintiff that it was false in any respect, presents a question for the jury, seems to me to be untenable.   A finding by the jury that this was not the contract would be clearly against the weight of evidence, and it would be our duty to reverse it.   There was no evidence that the boat was chartered for any specific purpose, to carry any specific goods from one particular place to another; but, on the contrary, the evidence is that it was chartered for no particular time, but simply at so much per day.   It is not claimed that the defendants did not furnish the lighter with competent men to man her, or with proper ropes and appliances to load and unload her; but the negligence, it is claimed, consisted in the fact that, in tying on a proper rope to raise a tank, it was placed but once around the cog wheel, which, by reason of having a sharp corner, was liable to cut the rope (which actually happened), or was placed around that cog wheel without a piece of cloth or some other substance to prevent the sharp corner from cutting the rope.   It is clear that this was merely a method of unloading the lighter; and I cannot see how it can be claimed upon this testimony that, in loading or unloading this vessel, these defendants had any duty to perform.   I think, therefore, that, when the captain was acting in either loading or unloading this lighter, he was not acting as an employé of the defendants,—not engaged in the performance of any duty that they owed to any one; and that any negligence of his in that work was not the negligence of these defendants.

The case of Hagar v. Clark, 78 N. Y. 48, relied on by the plaintiff, seems to me to be clearly distinguishable from this case,—in fact, an authority for the defendants.   The charter party in that case provided that the owners agreed on the freighting and chartering of the whole of the vessel, with the exception of the necessary room for the crew, etc.; and it was held that, under that provision, the defendants (the charterers) did not acquire the right to the whole vessel, for they were to have no more of it than was necessary for the cargo, nor so much, if it did not leave room for the crew and their provisions and the ship's clothing and cables; and, further, it was held that the owners, by the express terms of the charter party, had undertaken duties

in respect to the vessel, and obligations to the charterers, which could not be performed unless they remained owners of the vessel, and had control over it; and it was further held that, under the charter party, the duties devolved upon the owners of loading, stowing, and discharging the cargo. No such duties devolved upon the defendants in this case. On the contrary, the testimony is explicit that the agreement was to furnish the boat and two men, at $15 per day. If more men were required to load or unload the vessel, they were to be furnished, not by these defendants, but by the charterers; and, as a fact, more men were required, and they were furnished and paid for by the charterer. The question here is not as to who is responsible for negligence in the navigation of the vessel by the captain, placed there by the owner, as in Hagar v. Clark, supra, but who is responsible for negligence in unloading the vessel; and that, it seems to me, must be determined by the answer to the question whose duty it was to unload it. If it was the owner's duty to unload it,—if, by his contract, between himself and the charterer, for whom the plaintiff was working, any obligation existed on his part to do this work,—then neglect in the performance of that duty, either by himself or his agent, would make him liable. If, on the other hand, the defendants were under no obligation to load or unload this boat, or to supply either the persons to do that work or the materials with which it was done, then the neglect by the persons employed in the discharge of that duty, whether they had originally been employed by the defendants or by the charterer, was not the negligence of the defendants, for which they were liable.

I think, therefore, that the judgment should be reversed.