LETA D. POTTER, Appellant, *v.* AMERICAN UNION LINE,
INC., Respondent.

(Supreme Court, Appellate Term, First Department, December,
1920, Term — filed January, 1921.)

**Ships and shipping — contracts for towage — principal and agent.**

> The captain of a schooner has implied power to bind his
> own principal by a contract for the towage of the ship.
>
> Where the captain of a schooner made a contract with plain-
> tiff to tow the ship, the person for whose benefit the ship is
> operated on the particular voyage in which the expense for
> towage was incurred, not the actual owner of the ship, is
> the principal of the captain and is liable upon the contract
> for towage
>
> Where payment for the services rendered was refused on
> the ground that defendant was not the owner of the schooner
> and that the captain was not defendant's agent but the agent
> of the actual owner, a judgment dismissing the complaint will
> be reversed and judgment directed in favor of plaintiff.

APPEAL by the plaintiff from a judgment of the
Municipal Court of the city of New York, borough of
Manhattan, first district, dismissing the plaintiff's
complaint with costs to the defendant.

Foley & Martin (William H. Darrow, William J.
Martin, of counsel), for appellant.

Engel Brothers (Isidore Schneider, of counsel), for
respondent.

LEHMAN, J. The plaintiff was employed by the
captain of the schooner *James W. Elwell* to tow the
schooner from some place in the harbor of New York
to the Fairway buoy outside of Sandy Hook, for the
sum of $150. The captain indorsed upon the plain-

Appellate Term, First Department, January, 1921. [Vol. 114.

tiff's bill for this service the words "Am. Union Line, 11 Broadway, to sea from Red Hook, as agreed, $150. A. C. Clark, Master." There is no claim that the plaintiff did not render the services for which he was to be paid the sum of $150, and there is no claim that the captain did not have implied and apparent authority to contract with the plaintiff for these services, but the defendant refuses to pay the plaintiff's claim on the ground that it was not the owner of the schooner, and the captain of the schooner was not its agent, but the agent of the actual owner, the Northland Navigation Company, and that consequently no contract made by the captain, even though such contract purported to be made by him as agent for the defendant, is binding upon it. There can be no doubt that the captain of a schooner has the implied power to make contracts necessary and proper in the navigation of the ship which will be binding upon the ship's owner. The term " owner " when used in this connection does not mean necessarily the person in whom the legal title to the ship is vested, but rather the person for whose benefit the ship is operated on the particular voyage in which the expense is incurred, and who during that time has the direction and control of the ship, its officers and crew. The legal presumption is in favor of the continuance of ownership and control by the general owners of the ship, but where the evidence shows that there has been a parting with the possession of the ship so that during the voyage the absolute owner has surrendered his control over her, the officers of the ship become the agents of the special owner for the voyage, and have implied power to bind him and not the general owner. *Hagar* v. *Clark,* 78 N. Y. 45. The question, therefore, which is to be determined in this case involves simply the ordinary rules of agency. The captain of the ship had implied power

to bind his own principal, and the court was simply called upon to determine whether the defendant or the Northland Navigation Company was the captain's principal.

The burden of proof naturally rested upon the plaintiff, and in order to meet this burden he showed by undisputed and documentary evidence that this defendant had contracted in its own name with the French high commission for the transportation of freight during the war; that all arrangements in regard to this freight were made by defendant's servants; that it received in its own name payment of all freight charges, and that it paid all expenses including the wages of the captain. The plaintiff further showed that the defendant corresponded in its own name with the United States shipping board and made application to them to place the schooner *Elwell* on berth for Grecian ports with general cargo, and guaranteed that after the vessel's outward voyage, it would return by such route as directed by the chartering committee of the United States shipping board. It is true that the letters to the United States shipping board show that the defendant did not claim to be acting as the general owner of the ship, but they did show that the defendant claimed the right to control the course of the ship. The trial justice held, and in my opinion held correctly, that this testimony was sufficient to show *prima facie* that the defendant was in control of the schooner, and, therefore, in a legal sense the principal of the captain during this voyage. Thereupon the defendant produced its secretary and treasurer to rebut the plaintiff's testimony and the inference that might be drawn therefrom. He testified that the Northland Navigation Company was the owner of the schooner, that the defendant acted only as agents for the owners and signed the bills of lading

Appellate Term, First Department, January, 1921.   [Vol. 114.

for freight on this ship, with the word "agents" after their name, that the captain was in charge of the vessel for the owners, the Northland Navigation Company, though the defendant paid his salary, and in fact received all the moneys and paid all the expenses. He also testified that after the defendant received all the moneys and paid out all the expenses, the defendant "rendered a statement to the Northland Navigation Company showing the expenditures and the income." It is to be noted that his testimony that the Northland Navigation Company, and not the defendant, was the owner of the ship, that the defendant acted only as agent for the Northland Navigation Company, and that the captain of the ship was in charge thereof for the Northland Navigation Company, involved merely conclusions of law and not evidence. The only facts to which this witness testified and which would constitute evidence to be considered by the trial judge in determining the question before him was that the defendant signed the bills of lading with the description of agents after their name, and that the defendant rendered a statement to the Northland Navigation Company showing the expenditures and the income. If in fact the defendant had complete control and right to possession of the schooner, the fact that they chose to describe themselves as agents on the bill of lading would have no magic effect in exempting them from liability on contracts made by their duly authorized agents. On the other hand, if the defendant was merely acting for the benefit of the Northland Navigation Company and required to account to its principal for its receipts and expenditures and to pay over all the profits to its principal, then it is not liable upon the contracts made by agents whom it employed, not as its own servants, but as servants of its principal. Apparently the trial justice

has held that the defendant's testimony that it rendered a statement to the Northland Navigation Company of expenditures and income was sufficient to show that the defendant was only the agent of the general owner and to rebut any inference which might otherwise have been drawn from the plaintiff's testimony. Possibly if the defendant's testimony that it rendered a statement of the income and expenditures to the Northland Navigation Company was not explained or shaken upon cross-examination it might lead to the reasonable inference that the defendant was bound to render such an account and to pay over the surplus in whole to the Northland Navigation Company, or in other words, that the Northland Navigation Company was at all times the owner of the ship and the receipts received therefrom and the defendant merely its agent; though it would seem that if that were the fact, the defendant, which must be in possession of all the evidence necessary to show the true relations between the parties, could have produced testimony to show exactly what the defendant was required to do and actually did in connection with the management and control of this ship. We need not, however, now decide this question, because on cross-examination this same witness, the defendant's secretary and treasurer — and it may be said incidentally that he is also an officer of the Northland Navigation Company, which maintains its offices in the same building as the defendant — testified: "The Northland Navigation Company had no bank account. They were only the holding company." It seems to me that this final testimony of the defendant completely establishes the plaintiff's cause of action. The Northland Navigation Company was only the holding company. The defendant contracted for the freight in its own name, received payment for that freight in

.its own name, paid all the expenses of the ship, and held itself out to the United States government as authorized to guarantee the route of the ship on the return voyage, and I cannot see how it can be claimed that the evidence is sufficient to show that in all these transactions it was merely acting as the agent of a company which it admits was only a holding company and had not even a bank account. The very failure of the defendant to produce evidence to show the actual relations it bore to this holding company justifies the inference that such evidence, if produced, would not have been favorable to it. Under the circumstances I feel that the judgment is contrary to the evidence and the law, and should be reversed, with $30 costs to appellant, and judgment directed in favor of the plaintiff in the sum of $150, with interest and costs.

GUY and WAGNER, JJ., concur.

Judgment reversed, with thirty dollars costs to appellant.