## THE NICARAGUA.

### NICOLAYSEN v. ORR & LAUBENHEIMER CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. January 28, 1896.)

No. 439.

1. CHARTER PARTY—DEMISE OF SHIP—AGENCY OF MASTER.

Under a charter party whereby the general owner retains possession, command, and navigation of the ship, the master is the owner's agent, charged with the duty of getting proper entrance permits to the ports within the charter limits; and, for his default therein, the ship and her owner are liable.

2. SAME—DETENTION AT QUARANTINE—LIABILITY FOR LOSS OF CARGO.

Under a charter party not amounting to a demise, the ship is liable to the charterers for damage to perishable cargo, resulting from detention at quarantine because of the master's act in taking on board, without the charterer's consent, a passenger who was without the health certificate which the master knew would be required at the port of destination. 71 Fed. 723, affirmed.

Appeal from the District Court of the United States for the Southern District of Alabama.

This was a libel in rem by the Orr & Laubenheimer Company, Limited, against the Norwegian steamship Nicaragua (G. Nicolaysen, claimant), to recover, under a charter party, for damage to perishable cargo, accruing during detention of the vessel in quarantine at the port of Mobile. The district court rendered a decree for the libelant (71 Fed. 723), and the claimant appealed.

Gregory L. & H. T. Smith, for appellant.

H. Pillans, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

McCORMICK, Circuit Judge. This case was begun on August 24, 1894, by the libel of the appellee, seeking to recover damages for the alleged violation of a certain charter party, then existing between the libelant and the owners of the steamship, in that after the vessel had left Bluefields, Nicaragua, destined for Mobile, Ala., with a cargo of perishable fruit, the master thereof received and knowingly took on board at Bluefields a passenger, and brought him to Mobile, whereby, on arriving at Mobile, the steamship Nicaragua became and was detained by the quarantine authorities at that port, for fumigation, for a space of three entire days, which detention, the libel alleges, arose alone from the violation by the master of the quarantine regulations in bringing the passenger to Mobile. It is conceded by all that this vessel did arrive at quarantine station, Mobile Bay, on Saturday, the 19th of August, and was there de-

tained by the quarantine officer in charge on account of the presence of a passenger, one John McCafferty, and that certain damage did result to the cargo of the vessel from this detention. The extent of this damage is not now material, the only question raised by the assignments of error being as to the liability of the steamship for the damage thus suffered, the amount thereof having been correctly ascertained. On April 11, 1895, the district court decreed that the libelant was entitled to recover these damages, which were finally fixed at $2,833.15, for which a decree was rendered against the appellant on July 10, 1895. It is for the reversal of these decrees that this appeal is taken.

The respondent (now appellant) denies liability of the vessel in his answer, and now insists upon the reversal of the decree, for the following reasons: (1) Because the master of the steamship was, in the matter in question, the agent of the libelant, as charterer, and not as the agent of the owner of the vessel; (2) because no duly-established quarantine regulation was in fact violated; (3) because the passage of John McCafferty was in fact authorized by the agent of the libelant residing at Bluefields; (4) because McCafferty was an American citizen, who was at that time in great peril of assassination, and because it was necessary to so receive him as such passenger in order to save human life.

It is unnecessary and would be tedious to detail here and compare the evidence, which, as is not unusual in such cases, is conflicting. The charter party is in the common form of the West Indian and American time charter party; and, on consideration of its special provisions and of all the proof showing the practical construction put on it by the parties while it was in active life, we concur in the findings of the trial judge that it was not a demise of the vessel; the general owner did not part with the possession, command, and navigation of the ship; the captain was the agent of the owner of the vessel, whose business it was to get proper entrance permits to the ports within the charter limits, and that a default of the master in that respect is chargeable on the ship and its owners; that in August, 1894, there were in fact quarantine regulations in force in the port of Mobile, of which the appellant had notice, which required that passengers from Bluefields should have a health certificate or entrance permit from the quarantine physician at Bluefields, in default of which the vessel bringing passengers from Bluefields would be detained at the quarantine station. The proof with reference to the circumstances under which the passenger was brought from Bluefields does not relieve the master from his liability for failure to have the proper papers and entrance permit for this passenger, by reason of which failure the detention occurred and injury to the cargo resulted. The decree appealed from is affirmed.