### THE PHILOMENA.

(District Court, D. Massachusetts. July 5, 1912.)

No. 540.

1. SEAMEN (§ 27*)—LIEN FOR WAGES.

   An engineer, remaining on a vessel after it had been taken out of her owner's control and while under a marshal's custody, has no lien for wages during that time.

   [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 157–169; Dec. Dig. § 27.*]

2. MARITIME LIENS (§ 38*)—SUPPLIES—PRIORITY OF LIENS.

   That a vessel has not been within the jurisdiction where supplies were furnished to her since the time they were furnished is not sufficient to entitle the lien therefor to rank with those of later date.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 71–77; Dec. Dig. § 38.*]

3. MARITIME LIENS (§ 38*)—SUPPLIES—PRIORITIES.

   A firm furnishing coal in 1910 acquired a lien for the amount due against a vessel, which must be postponed to liens acquired in 1911.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 71–77; Dec. Dig. § 38.*]

In Admiralty. Suit by the Richard T. Green Company against the steamer Philomena. On determination of liens against proceeds of vessel.

See, also, 200 Fed. 859.

Blodgett, Jones & Burnham, of Boston, Mass., for libelant and petitioners.

J. M. Marshall, of Gloucester, Mass., Benjamin Thompson, of Portland, Me., Alger, Dean & Sullivan and Allen & Smith, all of Boston. Mass., William G. Clark, of Gloucester, Mass., C. L. De Normandie, Edwin C. Burbank, Allen & Barnes, Sweeney & Wilson and Amasa C. Gould, all of Boston, Mass., for petitioners.

Fitz Henry Smith, Jr., trustee in bankruptcy, of Boston, Mass., pro se.

DODGE, District Judge. Since the filing of the libel in this case the sale of the Philomena on October 21, 1911, as ordered by the court, and the order of November 21, 1911, that the marshal pay the proceeds of her sale into the registry, the net proceeds, amounting to $2,714.81, have been paid in, and intervening petitions have been filed, alleging claims by 35 different parties to share in said proceeds. Hearings have been had upon all these petitions, and the amounts for which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the libelant and the intervening petitioners have liens valid against the proceeds of the sale are now to be determined.

No objection are raised to the allowance of the following claims in the following amounts, and the final decree will allow them accordingly:

| | |
|---|---:|
| Richard T. Green Company, libelant | $529 15 |
| Union Ice Company | 16 25 |
| Brown Bros. Company | 95 47 |
| Pierce & Hartung | 52 88 |
| Staples Coal Company | 106 72 |
| Charles Parkhurst & Son | 46 79 |
| Charles A. Steel & Co. | 27 03 |
| Rocky Neck Marine Railway | 15 80 |
| L. E. Smith Company | 24 83 |
| Suffolk Coal Company | 83 78 |
| Pinninger & Manchester Company | 68 98 |
| Newport Ice Company | 24 00 |
| J. C. Killen & Son | 35 05 |
| Gloucester Coal Company | 174 03 |
| Geo. C. Tarr | 14 38 |
| Charles A. Marr | 7 81 |
| L. E. Andrews | 18 48 |
| Burnham Bros. | 15 25 |
| John F. Souza | 160 41 |
| Chas. Hendrickson | 20 00 |
| Ernest M. Cromwell | 58 01 |
| John Adams | 38 87 |
| William Holland | 19 74 |
| Smith-Bodfish-Swift Company | 22 22 |
| Patrick Burke | 37 40 |
| Jesse Hann | 39 00 |
| John Kelly | 20 00 |
| Patrick McDonald | 20 00 |

The claims objected to, in whole or in part, will be next considered. They are seven in number, as below:

[1] (1) Irving V. Allen, whose petition claims wages to the amount of $147, was employed by the Boston Fisheries Company, owner of the steamer, since become bankrupt, as her engineer, at $75 a month, and he had served on board her under that employment for some time prior to August 21, 1911. As to these facts there is no dispute. The wages he now claims are for the period beginning August 21 and ending October 11, 1911. On September 9th the libel in this case was filed, and the steamer arrested under it. She remained in the marshal's custody from that time until she was sold on October 21st. That the petitioner has a lien for wages up to September 9th is not disputed. After that time, however, he can hardly be said to have been rendering services on board in the ordinary maritime sense. The vessel had been taken out of her owner's control, and could not have been continued in her regular employment while under arrest. See opinion of this date in No. 539, The Bethulia, 200 Fed. 876, regarding claim of E. M. Garland against that vessel. Allen is entitled under his lien for wages to the amount of $47.50 due him for 19 days' services prior to September 9th. For the remainder of his claim he must depend upon his rights against his employer.

[2] (2) Randall & McAllister, of Portland, Me., furnished coal to this steamer in Portland August 23, 1910, to the amount of $16.16. They acquired a lien for the amount under the statute; but, following the principle adopted in other like instances, the amount having been due them since 1910, their lien must be postponed to liens acquired in 1911. That the steamer has not, since August 23, 1910, been in the district of Maine, so far as shown, does not seem to me enough to require an exception to be made in this petitioner's favor.

[3] (3) Bertelsen & Petersen Company, of Boston, made repairs upon this steamer on her engines and machinery in October, 1910, to the amount of $50.17, which is due it for the labor and materials therein furnished. Beginning with January 12 and continuing until January 23, 1911, it made other repairs upon her to the amount of $441.23, and on September 5th following still further repairs to the amount of $15.78. It has received nothing on account of the above. It has a lien upon the steamer under the act, and may be allowed against these proceeds $457.01 due for the repairs furnished in 1911. Its claim for the amount which became due in 1910 must be postponed to other later liens, as in the case of Randall & McAllister.

(4) Dexter M. Craig, of Plymouth, Mass., claims $36.54 for coal, oil, and water said to have been furnished to this steamer. As to all the items of the account annexed to the petition, except the last one of $1, they are claimed under date of September 27th. But if this means September 27, 1911, the vessel is shown by the other evidence in the case to have been in the marshal's custody at Boston on that date. Further evidence is necessary before anything can be allowed upon this claim. If due since 1910, it must be postponed.

(5) Allen B. Gifford's claim, amounting to $15.72, is for repairs in January, 1911, to the seine boat which accompanied this steamer when arrested and was sold with her. The facts regarding it are in all respects similar to those upon which a similar claim by him was allowed against the steamer Geisha and the seine boat and seines accompanying her, in Case No. 533, 200 Fed. 865, heard with this case. See the opinion of this date filed in the case referred to. For the reasons there stated, this claim is allowed.

(6) J. Arthur Woodbury's claim is for repairs made by him, in April, June, and July, 1911, upon the seines used by the steamer and seine boat above referred to during the season of 1911. $36.83 is due him for the repairs so made. The facts regarding his claim for this amount are in all respects similar to those upon which a similar claim by him was allowed in the case of The Geisha, above referred to, as stated in the opinion of this date in that case. For the reasons there stated, this claim is allowed.

(7) William B. Lantz, of Gloucester, makes a claim for $150 for a seine purser alleged to have been furnished by him to this steamer upon allegations and proof in all respects similar to that upon which his claim for a seine purser against the steamer Geisha, belonging to this owner, was founded. See the opinion in that case, No. 533 of this date. For the reasons there stated, I am unable to find that he has a lien for the value of the machine, and dismiss his claim.

The undisputed claims of Patrick Burke, Jesse Hann, John Kelly and Patrick McDonald, also the claim of Irving V. Allen, so far as it has been allowed above, are claims for wages, and are to be first paid in full out of the fund applicable. What then remains is next to be applied to the payment of the other claims allowed. If there is not enough to pay these claims in full, they will share pro rata. If anything remains after paying them in full, it is to be applied pro rata to the payment of those claims or parts of claims which have been postponed.