### THE BETHULIA.

(District Court, D. Massachusetts. July 5, 1912.)

### No. 539.

**1. Shipping (§ 69*)—Master—Lien for Wages.**

The master of a vessel has no lien for wages, but only a claim against the owner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 293–307, 312, 313, 315, 317, 318; Dec. Dig. § 69.*]

**2. Seamen (§ 27*)—Lien for Wages.**

The fact that a vessel is in custody of a sheriff under an attachment against the owner does not necessarily prevent the acquiring of a lien for wages by a seaman; but if it wholly suspends her employment and compels the abandonment of preparations for such employment, services on board while such custody lasts are not maritime in their nature, and will not create a lien.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 90; Dec. Dig. § 27.*]

**3. Maritime Liens (§ 35*)—Right to Lien.**

Claimant sold a net lifter to the owner of a number of fishing steamers, and had it shipped from the maker to such owner at its home port, where it was installed on one of its vessels and used. It did not appear that it was ordered specifically for any particular vessel. *Held*, that claimant was not entitled to a maritime lien for the purchase price.

[Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 35.*

Maritime liens, see notes to The George Dumois, 15 C. C. A. 679; The Nebraska, 17 C. C. A. 102; The Electron, 21 C. C. A. 21; The F. A. Kilburn, 103 C. C. A. 255.]

In Admiralty. Suit by the Lockwood Manufacturing Company against the steamer Bethulia. On distribution of proceeds of sale and determination of liens.

See, also, 200 Fed. 862, 879.

Stimson, Stockton, Livermore & Forbes, of Boston, Mass., for libelant.

Blodgett, Jones & Burnham and Alger, Dean & Sullivan, all of Boston, Mass., William G. Clark, of Gloucester, Mass., Edwin C. Burbank, of Boston, Mass., J. M. Marshall, of Gloucester, Mass., and Sweeney & Wilson, Amasa C. Gould, and Carver, Wardner & Goodwin, all of Boston, Mass., for petitioners.

Fitz Henry Smith, Jr., of Boston, Mass., trustee in bankruptcy, pro se.

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DODGE, District Judge.   Since the filing of the libel in this case, the sale of the Bethulia on October 21, 1911, as ordered by the court, and the order of November 21, 1911, directing payment of the proceeds of her sale into the registry, the net proceeds, amounting to $2,926.56, have been paid in, and intervening petitions have been filed, alleging claims by 24 different parties to share in said proceeds.   Hearings have been had upon all these petitions, and the amounts for which the libelant and the intervening petitioners have liens valid against the above proceeds are now to be determined.

No objections are raised to the allowance of the following claims in the following amounts, and the final decree will allow them accordingly:

| | |
|---|---:|
| Lockwood Manufacturing Company, libelant | $305 21 |
| Gloucester Coal Company | 323 41 |
| J. Killen & Son | 87 63 |
| Geo. C. Tarr | 1 80 |
| Union Ice Company | 37 50 |
| Staples Coal Company | 93 76 |
| Rocky Neck Marine Railway | 20 87 |
| Suffolk Coal Company | 389 09 |
| Douglas & Gaffney | 20 70 |
| James Cunningham | 68 77 |
| L. E. Andrews | 14 29 |
| C. W. Luce & Co. | 28 33 |
| Brown Bros. Company | 201 55 |
| Almy Water Tube Boiler Works | 24 00 |
| Charles A. Marr | 12 22 |
| Ernest M. Cromwell | 135 53 |
| John F. Souza | 5 50 |

The claims objected to, in whole or in part, will be next considered. There are seven in number, as follows:

(1) Jeremiah Campbell, Manager of the Boston Fisheries Company owner of the steamer, presents a claim for wages.   The steamer was employed in the fishing business and the crew were on shares.   The fish taken were delivered to the company, which had sold them and had been making settlements with the crew from time to time, at least as often as once a month.   On September 11, 1911, there being no money available for the purpose of settling with the crew, Campbell advanced money of his own for the purpose, and took from the crew assignments of their claims for wages against the steamer.   It is not disputed that he thus has liens for wages for the following amounts paid to the following persons:

| | |
|---|---:|
| Larry J. Parrons | $ 37 03 |
| Stone Marchant | 7 16 |
| C. Rankin | 84 58 |
| Norman Martell | 53 58 |
| Eliot Scott | 58 58 |
| Thomas Sampson | 58 58 |
| In all | $299 51 |

[1] He also paid $135.84 to Rutheford H. Marchant, the captain; but since the captain, under our laws, has no lien on the vessel for wages due him, but only a claim against the owner, Campbell must as

to this item stand in the same position, and his claim for it must be disallowed.

[2] (2) E. M. Garland's claim is also for wages. He was engineer on the steamer. He has been paid his wages up to September 7, 1911. He continued in the employ of the company as engineer of the steamer from that time until October 7, 1911. During all that time the steamer was in the custody of a sheriff, who had attached her upon a writ issued by a state court against the company, and had the sheriff's keeper on board. She had no crew on board, was laid up at wharf, and her regular employment was thus totally abandoned during the period in question. I think the petitioner must look to the company for his pay during this period, and cannot claim a maritime lien for wages on the steamer. Custody of a sheriff does not necessarily prevent the acquirement of a sailor's lien for wages. The J. S. Warden (D. C.) 175 Fed. 314. But if, as here, it suspends all maritime employment of the vessel, and compels the abandonment of any preparation for such employment, services on board while it lasts cannot be regarded as maritime in their nature. The C. Vanderbilt (D. C.) 86 Fed. 785.

(3) The Richard T. Green Company, of Chelsea, made in November and in December, 1910, repairs upon the steamer to the amount of $727.62. They have received, on account, $200 on December 24, 1910, $200 on April 6, 1911, and $100 in August, 1911; leaving $227.62 for which, as is not questioned, they have a lien upon the steamer. The amount, however, has been due since December, 1910, and must be postponed to liens subsequently accrued during the season of 1911.

(4) Bertelsen & Petersen Company, of Boston, made repairs upon the steamer, mainly upon her engines and machinery, in October, November and December, 1910. For the labor and materials therein furnished, there was due it $653.01. Beginning January 20, 1911, it made other repairs upon the steamer, and in this work furnished further labor and materials, some in each month from February to June, 1911, both inclusive, to the total amount of $114.40. It has received nothing on account of the above. It has a lien upon the steamer under the act, and is to be allowed against these proceeds the $114.40 which became due in 1911. Its claim for the amount which became due in 1910 must be postponed to other liens accruing during 1911, as in the case of Richard T. Green Company above.

(5) To J. Arthur Woodbury, of Gloucester, there is due for drying and repairing the seines used on board the seine boat which accompanied this vessel on seining trips, or for materials furnished in such repairs, during November and December, 1910, and in January and June, 1911, in all the sum of $95.58. Fifty dollars in cash was paid him August 4, 1911, on account, which more than covered the items due in 1910, and leaves him a lien, accruing in 1911 and allowable, to the amount of $45.48. This I consider allowable against the entire proceeds, whether arising from the sale of the seine boat and seines, or of the steamer herself. See opinion of this date in No. 533, The Geisha, 200 Fed. 865, against which vessel the petitioner presented a similar claim based on similar facts. What is said in the opinion re-

ferred to regarding this petitioner's claim is to be taken in connection with what is therein said regarding Allen B. Gifford's claim in the same case.

[3] (6) From John W. Atwood, of Gloucester, the company owning this steamer bought a machine called a "net lifter" on November 25, 1910. Such machines are intended for use on board fishing vessels, to assist the work of lifting such nets as may be employed in their operation. The agreed price was $400. Atwood ordered the machine from manufacturers in Michigan. It was forwarded from there and delivered to the company at Boston during the latter half of December, 1910. During that month the company paid Atwood $200 of the agreed price. After the delivery of the machine as above, it was installed and thereafter used on board this steamer. The company had previously bought another net lifter from Atwood at the same price, had paid for it, and was using it on one of the company's other two steamers. The evidence does not show this net lifter to have been ordered specifically for the Bethulia, nor to have been delivered to that particular vessel. I am unable on these facts to hold that Atwood has a lien upon the steamer, or upon the seine boat and seines sold with her, or the proceeds of either, for the $200 remaining due him. Admitting him to have had such a lien, it accrued in 1910, and would have to be postponed to liens accruing in 1911. The claim for $200 must be dismissed. After the net lifter had been put in use on board, however, and in 1911, the petitioner furnished repairs upon it to the amount of $52, and his claim for that amount is allowed.

(7) William B. Lantz, of Gloucester, makes a claim of $150 for the value of a seine purser alleged to have been furnished by him to this steamer or her seine boat, upon allegations and proof in all respects similar to those upon which his claim for a seine purser against the steamer Geisha, belonging to this owner, was founded. See the opinion in that case, of this date, referred to above. For the reasons there stated, I am unable to find that he has a lien for the value of the machine, and dismiss his claim.

Campbell's claim of $299.51, above allowed, being for wages, is entitled to priority, and is to be paid in full out of the fund applicable. What then remains, if insufficient to satisfy the other claims allowed in full, is to be distributed among them pro rata.