**THE ASTORIA. CHARLES R. McCORMICK & CO. v. ANGLO–AMERICAN S. S. AGENCIES, Inc., et al. ANGLO–AMERICAN S. S. AGENCIES, Inc., v. OLSEN et al.**

(Circuit Court of Appeals, Fifth Circuit. June 30, 1922.)

No. 3793.

I. **Shipping** ⬉89—**Where vessel safe master without authority to create lien on cargo for repairs.**

Where a vessel was safe in port, over the objections of cargo owner, master was without power to create a maritime lien on the cargo for repairs.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Admiralty ⟨key⟩100—Purchaser of vessel paying additional amount pursuant to order confirming sale not entitled to recover it.**
Where the court confirmed the sale of a vessel on condition that purchaser would pay $1,500 additional, purchaser, after voluntarily complying with this condition, was not entitled to recover the $1,500.

3. **Admiralty ⟨key⟩117—Appeal opens up whole case for trial de novo.**
An appeal brings the whole case before the appellate court, and has the effect of trying the case de novo.

4. **Seamen ⟨key⟩27—No lien for wages after vessel placed in custody of law.**
Except for the extra month's wages authorized by statute, there is no maritime lien in favor of the crew after the vessel was placed in the custody of the law.

5. **Admiralty ⟨key⟩101—Party furnishing food for crew has no lien but on sale of vessel is entitled to payment.**
A party furnishing food supplies for the crew of a libeled vessel under order of court did not acquire a lien on the vessel, but was entitled to payment from the proceeds of the sale of the vessel remaining after satisfying lienors.

6. **Admiralty ⟨key⟩101—Libelant entitled to payment though not lienor.**
After paying lienors, libelant, making advances for repairs and supplies, was entitled to the balance of the proceeds from the sale of the libeled vessel, though not lienor.

Appeals from the District Court of the United States for the Canal Zone; John W. Hanan, Judge.

Libel by the Anglo-American Steamship Agencies, Inc., against the schooner Astoria and cargo, in which Charles R. McCormick & Co. claimed the cargo, and J. W. Olsen and others, as the crew, intervened. From decrees in favor of libelant, the crew, and the Panama Canal, which was not a formal party, claimants of the cargo and libelant appeal. Affirmed in part, and reversed in part.

Chauncey P. Fairman, of Cristobal, Canal Zone (Ira S. Lillick, of San Francisco, Cal., on the brief), for Charles R. McCormick & Co.

William C. MacIntyre, of Ancon, Canal Zone, for Anglo-American S. S. Agencies, Inc.

Albert C. Hindman, of Ancon, Canal Zone, for J. W. Olsen and others and the Panama Canal.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal by Charles R. McCormick & Co., claimant of the cargo of the American twin screw motor schooner Astoria, from decrees in favor of the Anglo-American Steamship Agencies, of the crew of the schooner, and of the Panama Canal.

January 22, 1921, the Anglo-American Steamship Agencies libeled the Astoria and her cargo for repairs, supplies, canal tolls, and disbursements. February 2, 1921, the crew intervened, and also libeled both vessel and cargo for wages, and for transportation under R. S. § 4583 (Comp. St. § 8374). The Panama Canal did not become, by pleading or otherwise, a formal party to the proceedings. Default was entered against the vessel for failure to make claim or to answer. Appellant appeared and claimed the cargo.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The evidence disclosed that the owner of the Astoria at the time she was libeled was the Viking Shipping Company, which had theretofore been represented by the Marine Trading Corporation of New York as agent. The Anglo-American Steamship Agencies, a corporation under the laws of Maryland, hereinafter called libelant, was engaged in business at the Panama Canal as local steamship agent, and in the conduct of that business it was accustomed to advance necessary funds to vessels in order to facilitate their passage through the Canal. July 25, 1920, the Marine Trading Corporation wrote to libelant the following letter:

"We take pleasure in advising you that our auxiliary schooner Astoria will sail from Puget Sound some time in August with a cargo of lumber for New York, Philadelphia, or Baltimore. In accordance with your letter written us on February 26, 1919, we take pleasure in appointing you as our agents for this vessel, and ask that you kindly effect all disbursements for her, drawing on us at sight in the usual manner. We are instructing the master to report his arrival at the Canal immediately to you, so that you can secure dispatch through the Canal of the auxiliary schooner. We shall also ask that you please telegraph us arrival of the Astoria at the Canal, and also departure for North Atlantic ports when effected. The Astoria is an American auxiliary schooner, being 1,275 tons net and 1,611 tons gross register, and is commanded by Capt. A. W. Svensson."

December 14, 1920, the Astoria arrived at the Panama Canal short of provisions and with one of her engines disabled. The master applied to the libelant for funds sufficient, not only to pay charges for passage through the canal, but also to pay for repairs and supplies. The libelant made advances for these several purposes. Drafts made by it, to cover the amounts advanced up to some time in December, not definitely shown by the evidence, upon the Marine Trading Corporation, were dishonored, and on January 3, 1921, libelant received from the Marine Trading Corporation the following cable:

"Stop work entirely. Managers vessel terminated agency agreement with us. Will advise you whom to draw for disbursements."

In the meantime the libelant also cabled to the appellant, claimant of the cargo, stating that repairs were being made, and, "in order not to hold the cargo, we asked for their suggestions." Appellant replied that the cargo could not be held responsible for repairs to the vessel. After the libelant had received the foregoing communications from the New York agent, and from the owner of the cargo, it proceeded to advance funds for supplies and repairs to the vessel, in reliance upon the master's oral undertaking to pledge both vessel and cargo for advances already made and to be made. The shipping articles of the crew expired on January 23, 1921.

Proceedings were had for the sale of the vessel and cargo, and on April 5, 1921, the court entered its order confirming the sale to appellant of the vessel for $20,000, and of the cargo for $25,000, upon condition that the purchaser should pay the additional sum of $1,500, which was done. Thereafter the court entered separate decrees, one in favor of the libelant for $22,864.46, and the other in favor of the crew for $21,706.06, reciting that $11,524.96 had been paid under order of the court to the crew for wages to the date of the expiration of

their shipping articles and for transportation, leaving a balance of $10,-181.10, which was voluntarily reduced to $9,903.53. Thereafter the court entered an order of distribution, which included an allowance to the Panama Canal of $1,332.13 for food supplies furnished to the officers and crew of the vessel.

[1] We are of opinion that under the facts of this case the master was without power to create a maritime lien upon the cargo. Whether, in cases of urgent necessity, the master has authority to subject the vessel's cargo to a lien, over the protest and against the will of the cargo owner, does not arise in this case. The vessel was safe in port, the cargo was not in peril, and the cargo owner was within its rights when it in effect notified libelant that the cargo would not be liable for repairs to the vessel. The Julia Blake, 107 U. S. 418, 2 Sup. Ct. 692, 27 L. Ed. 595.

[2] Appellant contends also for return of the $1,500 paid by it, in addition to the amounts of its bids, in compliance with the condition, imposed by the court, upon which the sale was confirmed. The contention is untenable. Appellant voluntarily complied with the condition, paid the purchase price, and accepted title.

[3] The distribution of the proceeds derived from the sale of the vessel remains to be considered. The appeal brings the whole case before this court, and has the effect of requiring a trial de novo. The John Twohy, 255 U. S. 77, 41 Sup. Ct. 251. 65 L. Ed. 511. The libelant, Anglo-American Steamship Agencies, has also appealed, and complains of the allowance of wages to the crew subsequent to the filing of the original libel. It is objected on behalf of the crew that the libelant is not in position to assign error, because, it is said, it agreed to the distribution. We do not think that it is reasonable to construe the action of the libelant into a consent to the amount awarded to the crew. It is true the decree of distribution was presented to the court, with the statement that both the original and intervening libelants joined in it. But decrees of the court had been made theretofore in favor of the parties separately, and the decree of distribution was in compliance with, and in pursuance of, these previous orders.

[4] Upon the merits, we are of opinion that there was no maritime lien in favor of the crew for wages after the vessel was placed in the custody of the law, except for the extra month's wages authorized by statute, and that the award to the crew should be reduced accordingly. The Esteban de Antunano (C. C.) 31 Fed. 920; The Augustine Kobbe (D. C.) 37 Fed. 696; The Philomena (D. C.) 200 Fed. 873; The Bethulia (D. C.) 200 Fed. 876.

[5] Of the amount thus left in the registry of the court to be paid to the crew, there should be deducted in favor of the Panama Canal, upon proper application by it, the amount which the evidence shows it advanced for the purchase of food supplies for the crew, under the order of the court to furnish them "something to eat." The Panama Canal, by complying with this order, did not acquire a lien. It does not appear that the crew remained on board the vessel under order of the court, or that they rendered any service to the marshal, who became custodian and was compensated therefor. If the crew remained

on board, and the court acquiesced in it, no maritime lien was thereby created.

[6] We think that the balance left, after reducing the award in favor of the crew as above indicated, should be paid to the libelant, Anglo-American Steamship Agencies, because it has a right to share in surplus proceeds in the registry of the court, even though it may have no lien. Schuchardt v. Babbage, 19 How. 239, 15 L. Ed. 625; J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; The Atlantic City, 220 Fed. 281, 136 C. C. A. 297, Ann. Cas. 1915D, 50.

It is of no moment if exceptions should have been sustained to the original libel. The vessel was lawfully libeled and sold to satisfy liens in favor of the crew. Nor is any further application or evidence on behalf of the Anglo-American Steamship Agencies necessary. The claim has been fully set forth and proven.

The decree is reversed, with directions to dismiss the libels as against the cargo, and to return to appellant the proceeds of the sale thereof. The decree is also reversed in so far as it awards wages to the seamen subsequent to the filing of the original libel in addition to one month's extra pay, and in so far as it makes an award in favor of the Panama Canal, but with permission to the Panama Canal to make application for an allowance out of the extra month's pay awarded the crew under the statute.

The decree is affirmed as to the award in favor of the seamen for the month's wages provided by the statute. The cause is remanded for further proceedings not inconsistent with this opinion.