## THE RATHLIN HEAD. THE BURGONDIER. THE FRANKINVER. THE LORD DOWNSHIRE.

(District Court, E. D. Louisiana, New Orleans Division. September 22, 1923.)

Nos. 16522, 16527, 16528, 16551.

1. **Commerce ☞78—Wharfage dues imposed under authority of state are not tonnage duties.**

   Wharfage dues imposed under authority of a state are not to be considered as tonnage duties or charges on foreign or interstate commerce, unless so excessive as to be a burden on the same.

2. **Wharves ☞16—Wharfage regulation by port commission held reasonable and valid.**

   A temporary amendment to the schedule of wharfage charges, adopted by the board of commissioners of the port of New Orleans, at a time when the port was congested, giving free wharfage for the assembling of cargo for seven days after assignment of a wharf to a vessel, subject to the proviso that, if the vessel did not arrive within the seven days, wharfage should be paid thereafter until her arrival, and afterward at regular rates, *held* a reasonable and valid regulation for the purpose of preventing agents from securing assignments too long in advance and thus preventing use of wharves by other vessels.

3. **Wharves ☞18—Maritime lien exists for wharfage.**

   A maritime lien, enforceable by suit in rem, exists for wharfage, for the time during which the wharf was reserved for the use of the vessel and for part of the time in actual use.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Separate suits by the Board of Commissioners of the port of New Orleans against the following steamships: The Rathlin Head, the Burgondier, the Frankinver and the Lord Downshire. Decrees for libelant.

Arthur McGuirk, of New Orleans, La., for libelant.

Terriberry, Rice & Young and Walter Carroll, all of New Orleans, La., for respondent.

FOSTER, District Judge. These four cases present identically the same questions and were argued together. The facts are undisputed.

It appears that on February 18, 1920, the libelant, hereafter for convenience called the Dock Board, adopted a schedule of charges providing that all seagoing vessels docking in the port of New Orleans should pay, for the use of the wharves, wharfage of four cents a gross ton for the first day, three cents each for the second and third days, two cents for the fourth day, one cent each for the fifth and sixth days, no charge for the seventh to the sixteenth days, inclusive, and after that one cent each for the seventeenth to twenty-first days inclusive. On July 27, 1920, the tariff was amended. Under the amendment a vessel was allowed the use of the wharf, after assignment, 7 full days free of charge, for the purpose of assembling cargo, with this proviso: That if the vessel did not occupy the berth after the expiration of 7 days a wharfage charge of four cents per gross ton would be made for each successive day up to the day of her arrival at the berth, and after that the original schedule, as above set out, would be charged.

In these cases docks were assigned to the vessels at the request of their agents for the purpose of assembling cargo, but for some reason the ships did not arrive in port within the seven days free time. The Dock Board assessed the tariff, four cents per gross ton, against them until their arrival, and thereafter assessed wharfage as otherwise provided in the tariff. The vessels paid the regular charges for the time the ships were in port, but declined to pay the four cents per ton for the days exceeding 7 before their arrival. These charges are sought to be collected in these proceedings. It is the contention of respondents that the said tariff of four cents per gross ton is a penalty not within the authority of the Dock Board to levy, and is in effect a charge on commerce, or tonnage dues, and therefore violative of the federal Constitution. Lastly, it is contended that an action in rem will not lie, except for the period that the ship actually occupied the wharf.

[1] It is well settled that wharfage dues, imposed either under the authority of state laws or municipal ordinances, are not to be considered as tonnage dues, or charges on foreign or interstate commerce, unless so excessive as to be a burden on same. The Dock Board is an agent of the state of Louisiana, vested by law with complete jurisdiction of the wharves and river front of the port of New Orleans, within certain limits, and they are empowered to charge for the use of wharves, sheds, and other structures, and for the use of all facilities administered by them, and for any and all services rendered by them, such fees, rates, tariffs, and other charges as they may establish. See Act 14, Extra Session of 1915, and other acts in pari materia.

[2] The section of the tariff herein complained of remained in force only a very short time. It is shown by the testimony of McChesney, assistant superintendent of the Dock Board, that at the time the tariff was adopted and allowed to remain in force the port of New Orleans was very much congested, and it was intended thereby to prevent steamship agents from applying for assignment of wharves for the purpose of accumulating freight when the vessel was not in position to arrive within or at the expiration of the 7 days' free time, in order that other vessels might not be deprived of an assignment to the same wharf.

It is also shown that there is no general custom as to the length of time vessels occupy their respective berths in the port. Some ships come in, unload, reload, and go out within 48 hours. Others stay long enough to incur double wharfage. It is further shown that when ships, after having been assigned wharves under provisions of the tariff above quoted, have been unavoidably delayed by accident or other cause beyond their control, the Dock Board on application has in several instances remitted the wharfage assessed under the amendment to the tariff. There is no such condition in any of these four cases, and no application has been made for a reduction.

The question presented is purely one of contract, entered into voluntarily by the respondents. The Dock Board is under no obligation to allow free time to any ship. If they do so, they can certainly impose an alternative condition, especially when it is for the benefit of commerce in general, as is quite apparent here. Steamship agents are charged with knowledge of the position of the ships they represent and their probable date of arrival. There is nothing to compel them to apply for assignment of a wharf. They could wait for the arrival of the ship before asking for the assignment. If they elect to apply for that assignment before her arrival, as they receive 7 days' free time for the accumulation of freight, they should not complain if charges are imposed for the same privilege for a further period, though they may be in the nature of a penalty. The adoption of the tariff was well within the authority and discretion of the Dock Board.

[3] There remains the question of the lien and the right to proceed in rem. The respondent relies upon the case of The Alida, Fed. Cas. No. 4,245. This case was decided by a District Judge whose name does not appear in the record. Since then, in 1877, the Supreme Court has fully considered the question of wharfage in the case of Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373, and has this to say:

"It is clear that a contract for the use of a wharf by the master or owner of a ship or vessel is a maritime contract, and, as such that it is cognizable in the admiralty; that, such a contract being one made exclusively for the benefit of the ship or vessel, a maritime lien in the case supposed arises in favor of the proprietor of the wharf against the vessel for payment of reasonable and customary charges in that behalf for the use of the wharf, and that the same may be enforced by a proceeding in rem against the vessel, or by a suit in personam against the owner."

In these cases the vessels actually used the wharves for part of the time and had the use of the wharves exclusively for the balance, for the purpose of assembling freight, which would allow them to depart more quickly, thus saving demurrage and expenses. In the case of

The Allan Wilde, 264 Fed. 291, decided by the Circuit Court of Appeals for the Second Circuit, a recovery was allowed in rem under a Contract for 13 days' wharfage although the ship occupied the wharf for only 8 days. There is no appreciable distinction in these cases.

There will be judgment in favor of libelant for the amounts claimed, with interest at 5 per cent. from date of judicial demand.