## THE FORT GAINES.

District Court, D. Maryland. January 25, 1928.

No. 1458.

1. **Shipping ⬉69—Master's claim of lien for wages, not sought to be enforced for five years, held barred by laches.**

Master's claim of lien for wages, not sought to be enforced for five years, *held* barred by laches, in absence of evidence of inability to take steps earlier to enforce the claim.

2. **Admiralty ⬉34—Admiralty courts usually adopt state statute of limitations.**

While discretionary, admiralty courts usually will adopt the state statute of limitations.

3. **Maritime liens ⬉6—Time charter held not to make charterer "owner pro hac vice," so as to defeat his right to liens for advances.**

Time charter, requiring owner to pay crew and their victualing, and providing that captain, though appointed by owners, shall be under charterers' direction as regards employment, agency, or other arrangements, and reciting that owners' agent shall have power to act on their behalf, and if necessary dismiss any of officers on charterers' complaint, if such complaints are justified and proved, and requiring owner to attend to repairs and pay for jettison of cargo and insurance, *held* not to make charterer "owner pro hac vice," so as to defeat charterer's right to liens for advances.

4. **Maritime liens ⬉6—Charterer, who was not owner pro hac vice, held not entitled to lien for advances for wages, supplies, and repairs.**

Charterer, who was not owner pro hac vice, *held* not entitled to liens for advances for wages, supplies, and repairs, since in making advances against the charter hire there was no dealing with the ship, but rather with her owners, and in advancing more than was due on hire he should be presumed as acting on credit of owner.

5. **Shipping ⬉69—Master had no maritime lien for wages earned after seizure on legal process.**

Master of vessel *held* not entitled to maritime lien for wages accruing after vessel was seized on legal process.

6. **Maritime liens ⬉36—Claims of furnishers of supplies to vessel on master's credit held entitled to priority over master's claim on his personal liability therefor.**

Master, obligating himself personally for supplies furnished to vessel, should not be allowed to compete with such furnishers for distribution of proceeds of sale of vessel in admiralty, but their claims will be afforded priority over master's claim.

7. **Maritime liens ⬉37(1)—Maritime liens of same class accruing in single year are entitled to share equally in proceeds of sale of vessel, with priority over liens of following years.**

All maritime liens of the same class accruing in a single year are to be treated as on a parity, and admitted to equal share in the proceeds of the sale of the vessel, with priority over lien claims accruing in following years.

8. **Maritime liens ⬉37(1)—Claim accruing partly in one year and partly in following year will be treated as arising in one year, where impossible to tell which part was unpaid by partial payments.**

Where portion of maritime lienor's claim accrued in 1923 and balance in 1924, but entire claim was consolidated and partial payments made thereon, so that it was impossible to tell from evidence what, if any, part of claim accruing in 1924 was still unpaid, the entire claim will be treated as a whole, and placed in one class as respects the year rule of priority.

In Admiralty. Suit by A. Frank Stafford and others, copartners trading as Joseph Keegan & Co., against the steamship Fort Gaines, involving order of priority respecting maritime lien claims for wages, supplies, repairs, and miscellaneous advances. Decree in accordance with opinion.

See, also, 21 F.(2d) 865.

John Henry Skeen, of Baltimore, Md., for libelants.

John Thomas Scheu, W. Purnell Hall, Marbury, Gosnell & Williams, Brown, Brune, Parker & Carey, Griffin & Beatty, George T. Mister, Wm. H. Lawrence, and Lee S. Meyer, all of Baltimore, Md., for intervening libelants.

WILLIAM C. COLEMAN, District Judge. The question here presented is the order of priority respecting maritime lien claims for various wages, supplies, repairs, and miscellaneous advances, in the distribution of proceeds now in the registry of this court from the sale of the steamship Fort Gaines under admiralty process.

The original libel was filed by Joseph J. Keegan & Co. against the steamer Fort Gaines, asserting a lien for supplies. Immediately thereafter, numerous intervening libels were filed, asserting liens for wages, supplies, and repairs. The vessel was sold, and the proceeds of the sale, amounting to

approximately $9,300, deposited in the registry. At a previous trial (18 F.[2d] 413) Judge Soper, sitting in this court, held that with respect to the wage claimants Norwegian law controlled, and as a result that all such claimants were entitled to liens. They were paid the aggregate sum of $2,095, leaving $7,232.45 now in the registry. A decision upon the master's claim was temporarily withheld pending proof as to what supplies and materials might have been furnished to the ship by the other claimants, and whether any of the same were furnished on the order of the master.

The claims now before the court are as follows, and for the sake of convenience, will be taken up in the numerical order in which they appear below:

| | |
|---|---|
| (1) C. M. Mathiesen, for wages as master during 1921 | $ 1,228.00 |
| (2) A. Lanasa, for supplies, advances, etc., furnished while charterer, August 10 to October 7, 1926 | 4,646.11 |
| (3) H. Bieneman, for wages, and also for miscellaneous cash advances as master during 1926 | 830.97 |
| (4) Joseph J. Keegan & Co., for supplies from July 6 to September 26, 1926 | 2,254.77 |
| Broadway Market Stores, for supplies from April 9 to September 30, 1926 | 1,264.71 |
| (5) Paramount Packing Company, for supplies from August 13 to October 5, 1926 | 88.93 |
| Standard Oil Company, for supplies on October 5, 1926 | 60.89 |
| Garmey, Bodin & Johansen, for surveys in 1924 and in February, 1926 | 529.00 |
| Det Norske Veritas, for surveys, February and June, 1926 | 209.00 |
| Bethelehem Shipbuilding Corporation, repairs, March 3 to October 15, 1926 | 1,250.25 |
| (6) Baltimore Ship Repair Company, for supplies from August 18 to December 8, 1925 | 277.71 |
| | $12,640.34 |

None of these claims is disputed as to amount, except that of the charterer, Lanasa, hereinafter referred to.

[1, 2] 1. *Wage Claim of Mathiesen as Master.*—It seems clear that any lien which this claimant might otherwise have had by virtue of the decision of this court, in The Fort Gaines, supra, must be barred by laches. His libel was not filed until November, 1926. No evidence is offered of inability to take steps earlier to enforce his claim, and therefore a lapse of five years must be regarded as too long. While discretionary, admiralty courts will usually adopt the state statute of limitations. Great Lakes Transportation Co. v. Hand & Johnson Tug Line (D. C.) 289 F. 130; Bailey v. Sundberg (C. C. A.) 49 F. 583; Southard v. Brady (C. C.) 36 F. 560. All of the other claims now under review were filed within a year of their accrual, except two, which, however, were well within the three-year Maryland state statute of limitations. Code Pub. Gen. Laws 1924, art. 57, § 1.

[3] 2. *Claim of the Charterer, A. Lanasa, for Supplies, Advances, etc.*—This claim includes a great variety of items, such as cash advances for wages, supplies, repairs, claims for off hire, commissions on charter hire, and so forth. The vessel was let to Lanasa under a time charter of 11 months at a monthly rate, the owner to pay the crew and their victualing. Clause 11 provides, inter alia: "That the captain, although appointed by the owners, shall be under the orders and direction of the charterers as regards employment, agency, or other arrangements; and the charterers hereby agree to indemnify the owners from all consequence or liabilities that may arise from the captain signing bills of lading or otherwise complying with their orders and directions. That if the charterers shall have reason to be dissatisfied with the conduct of the captain, officers, or engineers, they shall make such complaint in writing to an agent in New York especially appointed by owners, who shall have full power to act on their behalf, and, if necessary, dismiss any of the officers, should they find the complaints made by the charterers are justified and proven." Other clauses require the owner to attend to repairs and pay for jettison of cargo, insurance, etc. Under such provisions as the above, a charterer is not to be regarded as owner pro hac vice, but the control still remains with the owner. Leary v. U. S., 14 Wall. 607, 20 L. Ed. 756; The Nicaragua (C. C. A.) 72 F. 207; Boston Elevated Ry. Co. v. Malley (D. C.) 288 F. 864. See, also, Hagar v. Clark, 78 N. Y. 45. This being true, Lanasa's claim is not governed by the well-established rule that an owner or manager of a vessel has no lien for advances. The Jennie B. Gilkey (C. C.) 20 F. 161; The Queen of St. Johns (C. C.) 31 F. 24; The Putnick (D. C.) 291 F. 902.

The only reported case that has been found closely analogous to the situation here presented, namely, that of a lien being claimed for advances made by a charterer, is Moore v. The Robilant (C. C.) 42 F. 162. There the court held that, since the charter provided that the charterer should have a lien for advances, such a lien should be allowed. See, also, The Ascutney (D. C.) 278 F. 991. But the Moore Case does not an-

swer the question as to whether there shall be a lien if the charter is *silent*, as it is here. In other words, that decision does not say that there shall be no lien if there is no express provision for one, but in The Putnick, supra, there is an intimation to this effect. Paragraph 9 of the charter in the present case recites that "cash for ship's necessary disbursements, if desired by the master, but not exceeding ——— monthly, to be supplied by charterers to the captain at current rate of exchange, subject to commission of 2½ per cent., to cover all charges and captain's receipt to be taken as part payment to the charterer." It is to be noted that the maximum amount of disbursements allowed is left blank.

[4] Regarding Lanasa, then, as merely one who has contracted for the use of the vessel as a private carrier of his own goods, we have the question: To whom was credit extended, when he, the charterer, made these advances? The mere asking of this question suggests the answer that he must have relied upon the credit of the owner, for in making advances against the charter hire there is no dealing with the ship, but rather with her owners, and naturally, when Lanasa chose to advance more than was due on the hire, as he did, it seems that he should still be presumed as acting upon the credit of the owner. Furthermore, his contractual relations with the owners through the charter party bought him into contact with them such as would not exist in the case of third persons dealing with the vessel. That is to say, third persons would normally be expected to rely upon the vessel's credit while the charterer would normally be expected to rely upon the owner's. It has been held in a number of cases that a charterer's or ship's agent has no lien for his advances, since he is presumed to rely on the credit of his principal, rather than upon the credit of the vessel. The Hekla, 1924 A. M. C. 102; The Hoxie (C. C. A.) 297 F. 189; The Centaurus (C. C. A.) 291 F. 751; The Esteban de Antunano (C. C.) 31 F. 920. Such decisions are persuasive of the presumption, therefore, that Lanasa in this case relied upon the credit of the owners rather than that of the vessel. Lastly, it does not seem equitable that one who pays out money to keep a vessel operating in his own behalf should be allowed to compete with the general creditors of the vessel in the distribution of funds realized from its sale. This principle has been recognized in postponing interested lienors, such as stockholders or directors, to other creditors. The Murphy Tugs (D. C.) 28 F. 429. Lanasa's claim for a lien must therefore be disallowed.

[5] 3. *Claim of Bieneman for Wages as Master and for Cash Advances.*—The court considers that this claimant is entitled to a lien, except as to those amounts which accrued after the date of seizure of the vessel, namely, October 5, 1926. The Fort Gaines, supra. The court finds the total amount thus allowable to be $667.77, which excludes any additional items which accrued after October 5, 1926, and also several other advances as to which proof is lacking as to the exact date of accrual.

[6] The further fact appears that this claimant, Bieneman, obligated himself personally for supplies to the two claimants, Keegan & Co. and the Broadway Market Store. He ordered supplies from them for the vessel. They being able, therefore, to hold him liable personally, under well-established principles of equity, he should not be allowed to compete with his own creditors in the distribution of the fund in admiralty.

4. *Claims of Keegan & Co. and Broadway Market Store for Supplies.*—For the reasons just stated in the preceding paragraph, these two claimants will be accorded priority over the master's claim. The Edward Oliver, 16 L. T. 575; The Selah, 4 Sawy. 40, Fed. Cas. No. 12,636; The Erinagh (D. C.) 7 F. 231.

[7] 5. *The Various Other Claims for Supplies and Miscellaneous Items.*—It is evident that the fund in the registry is sufficient to satisfy all of the libelants whose claims have now been allowed, and therefore the question of priority becomes unimportant. However, it may be well to say a word more with respect to the exact situation. All of the claims not heretofore discussed, except that of the Baltimore Ship Repair Company, arose at concurring times within the year 1926, or at such close intervals as to make the time element within the year not material. Therefore the court deems this a proper situation for the application of the year rule as laid down in numerous cases; that is to say, all liens of the same class accruing in a single year are to be treated as upon a parity and admitted to equal share in the fund. The Bethulia (D. C.) 200 F. 876; The Philomena (D. C.) 200 F. 873; In re New England Transportation Co. (D. C.) 220 F. 203.

[8] While it appears that a portion of the claim of Garmey, Bodin, and Johansen accrued in 1923, nevertheless, since the entire claim has been consolidated and partial payments made thereon, it is impossible to tell from the evidence what, if any, part of that which accrued in 1924 is still unpaid. There-

fore the entire claim will be treated as a whole and placed in the class with the others.

6. *Claim of Baltimore Ship Repair Company for Supplies.*—As above stated, since this claim accrued in 1925, it must take a position junior to the foregoing liens. The Philomena, supra.

A decree will be signed in accordance with the foregoing allowance of the various liens.