## THE LITTLE CHARLEY.

District Court, D. Maryland. March 5, 1929. No. 1593.

Harry N. Abercrombie, of Baltimore, Md., for libelant.

John H. Skeen, of Baltimore, Md., for intervening libelants.

WILLIAM C. COLEMAN, District Judge. The question here presented involves the order of priority between various maritime liens and a common-law mortgage on the power boat Little Charley, in the distribution of proceeds now in the registry of this court from the sale of this vessel, including also the question as to what rights, if any, the mortgagee has by subrogation, because certain of the funds advanced under his mortgage were used to pay off various maritime liens.

The original libel was filed by various seamen against the vessel, asserting a lien for their wages. All of these wage claims have been previously disposed of. Numerous intervening libels were filed asserting liens for repairs, supplies, wharfage, and stevedoring, and it is these which are now before the court. After payment of the seamen's wages, there remains in the registry the net sum of $1,129.81. The claims, in addition to the mortgage claim, now before the court are as follows:

|  | Year of Accrual. | Amount. |
|---|---|---|
| John H. Adams, for repairs....... | 1927 | $ 32.90 |
| Charles L. Rohde, for supplies (including interest on notes)... | 1926–27 | 336.62 |
| Tolchester Company, for wharfage ................................ | 1927 | 183.86 |
| Middleton & Meads, for repairs... | 1925 | 86.37 |
| W. L. Muir & Sons, for repairs... | 1927 | 7.50 |
| Stavely & Bowers, for supplies... | 1927 | 22.17 |
| N. Liberman, for supplies......... | 1927 | 5.79 |
| Dudley & Carpenter, for supplies. | 1926 | 42.84 |
| Standard Oil Co., for supplies..... | 1927 | 167.25 |
| W. H. Fogwell, for stevedoring.... | 1927 | 118.29 |
|  |  | $1,003.59 |

James W. Urie, an intervening libelant, was given a mortgage by the owner on the Little Charley and also on the owner's automobile to cover a loan of $1,900. This mortgage was recorded November 5, 1926, and there is still due under it the sum of $1,796.82. It is admitted that the mortgage is a nonmaritime one. As to claims prior to the date of the mortgage's recordation, the mort-

gagee claims priority because of laches. The earliest accrual date of any claim was August, 1925. Within 11 months of the recording of the mortgage, the vessel was libeled for wages, and promptly thereafter the present claimants intervened. Since, therefore, all of the libels were filed well within the 3-year state statutory period of limitations (Code Pub. Gen. Laws Md. 1924, art. 57, § 1), this court concludes that they are not barred, because, although not bound by the state rule, it will be used as a guide, except in very exceptional cases. The Fort Gaines (D. C.) 24 F.(2d) 438; The General Lincoln (D. C.) 24 F.(2d) 441.

Liens for repairs, supplies, or other necessaries furnished to a vessel, by section 30, subsec. P, of the Ship Mortgage Act of June 5, 1920 (46 USCA § 971), are entitled to priority over a common-law mortgage, section 30, subsec. S (46 USCA § 974). The Ocean View (D. C.) 21 F.(2d) 875. Furthermore, the act destroys any distinction between home and foreign ports. The Northern Star, 271 U. S. 552, 46 S. Ct. 589, 70 L. Ed. 1082; John Baizley Iron Works v. U. S. (D. C.) 6 F.(2d) 25. It follows, therefore, that all of the claims in the present suit do in fact represent actual maritime claims, prima facie senior to the mortgage. All liens of the same class, accruing within the same year, are entitled to share equally in the proceeds in the registry, and are prior to liens accruing in any preceding year. The Fort Gaines, supra; The Philomena (D. C.) 200 F. 873.

■ The mortgagee, however, claims subrogation by virtue of certain advances which the owner made on behalf of the vessel out of the proceeds of the mortgage loan, namely, $825. It is true that advances made to a vessel's owner on the vessel's credit, for the purpose of paying, and out of which there is actually paid, maritime claims, entitle the one making such advances to a maritime lien of equal rank with the claims thus satisfied, without regard to an actual necessity for the advances. The Minnie and Emma (D. C.) 21 F.(2d) 991. The mortgagee has proved advances of this character in the amount of $825. Therefore he is entitled to priority over claims arising previous to the making of such advances, and is entitled to share pari passu with claims accruing in the same year.

■ From the evidence it is virtually impossible to tell what part of the claim of Charles L. Rohde arose in 1925 and what part arose in 1926. It appears, however, that, of $239.90 forming a portion of the total claim of $336.62, part became due in 1925 and part in 1926. Under these circumstances, it is proper that the entire sum shall be allocated to 1926. See The Fort Gaines, supra. The mortgagee's claim is on an equality with this item, but inferior to the balance of the Rohde claim, namely, $96.72, which accrued in 1927. The intervening libelants claim, however, that whatever rights the mortgagee would normally have by subrogation have been waived by his taking the mortgage and notes. But the law is otherwise. See The Alfred J. Murray (D. C.) 60 F. 926; The Cimbria (D. C.) 214 F. 128; The Yankton (D. C.) 7 F.(2d) 384. There is no evidence that it was the credit of the owner, and not of the vessel, that was relied on. Furthermore, the Ship Mortgage Act, supra, presumes reliance upon the vessel.

■ As to the claim of Dudley & Carpenter, amounting to $42.84, it accrued in 1926, and according to the foregoing principles should share equally, without interest, with the claim of the mortgagee. The claim of Middleton & Meads, since it arose in 1925, is postponed to the mortgagee's claim. The claim of the Tolchester Company for wharfage is not in fact based upon the length of time that the vessel lay at the wharf, nor upon her tonnage, but is a flat charge of 1 cent per basket and bushel of merchandise left on the pier for loading. It is admitted, however, that all of the merchandise was loaded directly into the vessel, and the rate appears to be the customary one, when the wharf is so used for loading vessels of this kind with this type of cargo. Under these circumstances, it does not seem improper to characterize the service as wharfage, and thus to accord it a maritime lien. See The Poznan (C. C. A.) 9 F. (2d) 838, and cases cited; also Ulster S. S. Co. v. Board of Commissioners (C. C. A.) 299 F. 474; The Rathlin Head (D. C.) 292 F. 867.

■ There is no proof that any of the claims herein allowed are unreasonable in amount for the services rendered. Therefore those which arose in 1927, amounting to $634.48, are entitled to be paid in full out of the fund in the registry. Among these is included the claim of W. H. Fogwell for stevedoring services, for which a lien is properly allowable under the Ship Mortgage Act, supra. See The Henry S. Grove (D. C.) 285 F. 60. In the balance in the registry, namely, $495.33, the claim of Dudley & Carpenter, amounting to $42.84, $239.90 of the Rohde claim, and the mortgagee's claim of $825 will share pro rata.

An order will be signed respecting the various liens in accordance with this opinion.